NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| DENISE J.,<br><br>Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | Civil Action No. 25-1909 (MAS)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court upon Plaintiff Denise J.'s ("Plaintiff")[1] appeal of the Commissioner of the Social Security Administration's (the "Commissioner") final decision partially denying Plaintiff's request for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II of the Social Security Act (the "Act"). (ECF No. 1.) The Court has jurisdiction to review this matter under 42 U.S.C. § 405(g) and reaches its decision without oral argument under Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons below, the Court affirms the Commissioner's decision.

I.    **BACKGROUND**

In this appeal, the Court must consider whether the Administrative Law Judge's (the "ALJ") determination that Plaintiff was not disabled prior to December 4, 2024, is supported by substantial evidence. The Court begins with the procedural posture and decision by the ALJ.

---

[1] The Court identifies Plaintiff by first name and last initial only. *See* D.N.J. Standing Order 2021-10.

### A.    Procedural Background

Plaintiff filed an application for DIB and SSI on January 22, 2016, alleging a disability onset date of July 24, 2015. (AR 190-202, ECF No. 4.)[2] Plaintiff's date last insured for DIB was December 31, 2020. (*Id.* at 2301.) The Social Security Administration (the "Administration") denied Plaintiff's initial application. (*Id.* at 78-92.) Thereafter, Plaintiff requested a hearing before the ALJ. (*Id.* at 115-118.) The ALJ subsequently denied Plaintiff's claim on August 30, 2018. (*Id.* at 12-27.) Plaintiff submitted a request for review, which the Appeals Council denied on July 19, 2019. (*Id.* at 1-9.) Plaintiff appealed to the Western District of New York, and the court issued a remand order on November 19, 2020. (*Id.* at 1124-37.) The Appeals Council then vacated the ALJ's August 2018 decision. (*Id.* at 1140.) The ALJ held a second hearing on May 28, 2021, and again denied Plaintiff's claim on July 30, 2021. (*Id.* at 1029-96.) Plaintiff again appealed to the Western District of New York and the court entered a consent order to remand on March 8, 2023. (*Id.* at 2140-42.)

On May 20, 2023, the Appeals Council issued an order directing the ALJ to evaluate the opinions of Maira Ilahi, D.O., and Lisa Horlein, LCAT. (*Id.* at 2145-47.) The ALJ held hearings in February and July 2024. (*Id.* at 2025-93.) On December 18, 2024, the ALJ granted in part and denied in part Plaintiff's claim. (*Id.* at 1977-2013.) This appeal followed. (*See generally* Compl., ECF No. 1.) Plaintiff subsequently filed her moving brief in this action (Pl.'s Moving Br., ECF No. 5), the Commissioner opposed (Def.'s Opp'n Br., ECF No. 7), and Plaintiff replied (Pl.'s Reply Br., ECF No. 8).

---

[2] The Administrative Record ("AR") is located at ECF Nos. 4 through 4-34. The Court will reference the relevant pages of the AR and will not reference the corresponding ECF page numbers within those files.

B.      **The ALJ's Decision**

The ALJ's December 18, 2024, decision concluded that Plaintiff became disabled on December 4, 2024, but was not disabled prior to that date. (AR 1982.) The ALJ set forth the Administration's five-step sequential analysis for determining whether an individual is disabled. (*Id.* at 1982-83 (citing 20 C.F.R. § 404.1520).) As an initial matter, the ALJ found that Plaintiff "meets the insured status requirements of the . . . Act through December 31, 2020." (*Id.* at 1983.) At step one, the ALJ found that Plaintiff has not "engaged in substantial gainful activity" since July 24, 2015. (*Id.* at 1983-84 (citing 20 C.F.R. §§ 404.1571 *et seq.*, 416.971 *et seq.*).) At step two, the ALJ found that Plaintiff suffered from the following severe impairments: (1) degenerative disc disease of the cervical and lumbar spine with cervical and lumbar radiculopathy; (2) asthma; (3) obesity; (4) chondromalacia patella of the right knee; (5) unilateral primary osteoarthritis, chondromalacia patellae, and ganglion cyst of the left knee; (6) left hip tenosynovitis and mild trochanteric bursitis; (7) anxiety; and (8) depression. (*Id.* at 1984 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)).) Despite the ALJ finding Plaintiff had severe impairments, he determined at step three that Plaintiff does not have "an impairment or combination of impairments" that qualifies under the Administration's listed impairments. (*Id.* at 1986-90 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).)

The ALJ then found that, as of July 24, 2015, Plaintiff possessed the residual functional capacity (the "RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) subject to the following limitations:

> [Plaintiff] can lift and carry frequently up to 10 pounds but can lift nothing over 10 pounds. [Plaintiff] can sit 6 hours in an 8-hour day and stand or walk 2 hours in an 8-hour day. [Plaintiff] is limited to occasional climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; no balancing; occasional stooping; and no kneeling, crouching, or crawling. [Plaintiff] is limited to

3

> environments in which there is no exposure to excessive cold, excessive heat, or excessive moisture or humidity. [Plaintiff] can have no concentrated exposure to pulmonary irritants such as odors, fumes, dusts, gases, or poor ventilation. [Plaintiff] can never work in environments in which she would be exposed to excessive vibration or hazards such as unprotected heights or moving machinery. [Plaintiff] is limited to simple, routine tasks that can be learned after a short demonstration or within 30 days. [Plaintiff] is limited to work in which there would be no more than occasional interaction with the public, coworkers, and supervisors. She is limited to work that requires doing the same tasks every day with little variation in location, hours, or tasks.

(*Id.* at 1990.) In determining Plaintiff had the RFC to "perform sedentary work" subject to certain limitations, the ALJ thoroughly detailed Plaintiff's medical history, including Plaintiff's subjective testimony and Plaintiff's complete medical records. (*Id.* at 1990-2009.) The ALJ further explained that he could neither defer to nor find persuasive the record from prior administrative findings after a review of the complete record and set forth the justification for his own findings. (*Id.* at 2002.) At step four, the ALJ determined that Plaintiff had no relevant past work. (*Id.* at 2009.)

In the fifth step, the ALJ concluded that, prior to December 4, 2024, Plaintiff was capable of performing sedentary work consistent with her limitations, such as a document preparer, a ticket checker, or a nut sorter. (*Id.* at 2010.) The ALJ found the vocational expert's testimony in this regard consistent with the information provided in the Dictionary of Occupational Titles considering Plaintiff's age, education, work experience, and RFC. (*Id.* at 2010-11.) The ALJ, however, noted that on December 4, 2024, Plaintiff's age category mandated a change in his assessment. (*Id.* at 2011) The ALJ thus concluded that as of December 4, 2024, "there are no jobs that exist in significant numbers in the national economy that [Plaintiff] could perform." (*Id.*) As such, the ALJ concluded Plaintiff became disabled as contemplated by the Act on December 4, 2024, but was not disabled prior to that point. (*Id.*)

This appeal concerns the ALJ's RFC determination that Plaintiff was not disabled prior to December 4, 2024. (*See generally* Pl.'s Moving Br.) The Court must therefore resolve whether the ALJ's RFC determination was supported by substantial evidence.

## II.    **LEGAL STANDARD**

### A.    **Standard of Review**

On appeal from the final decision of the Commissioner, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001) (internal quotation marks and citation omitted). To survive judicial review, the Commissioner's decision must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 390 (1971) (quoting 42 U.S.C. § 405(g)); *see Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000) (explaining that the reviewing court is "bound to the Commissioner's findings of fact if they are supported by substantial evidence"). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence "'may be somewhat less than a preponderance' of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

In reviewing the record for substantial evidence, the court "may not weigh the evidence or substitute [its own] conclusions for those of the fact-finder." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (internal quotation marks and citation omitted). Even if the court would have decided differently, it is bound by the ALJ's decision if it is supported by substantial evidence.

*Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)). The court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999)). "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981) (citation omitted).

### B.      Establishing Disability

To be eligible for DIB, claimants must be unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A). For purposes of the statute, a claimant is disabled only if her physical or mental impairments are "of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423(d)(2)(A). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

Administration regulations provide a five-step evaluation procedure to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4). For the first step, the claimant must establish that she has not engaged in any substantial gainful activity since the onset of her alleged disability. 20 C.F.R. § 404.1520(a)(4)(i). For the second step, the claimant must establish that she suffers

from a "severe . . . impairment" or "combination of impairments." *Id.* § 404.1520(a)(4)(ii). Claimants bear the burden of establishing the first two requirements, and failure to satisfy either one results in a denial of benefits. *Bowen v. Yuckert*, 482 U.S. 137, 140-41, 146 n.5 (1987). The third step requires that the claimant provide evidence that her impairments are equal to at least one of the impairments listed in Appendix 1 of the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that she suffers from a listed impairment or that her severe impairment is equal to a listed impairment, she is presumed to be disabled and entitled to DIB. *Id.*; *Id.* § 404.1520(d). If she cannot so demonstrate, the eligibility analysis proceeds to step four. *See Id.* § 404.1520(e).

Under the fourth step, the ALJ determines whether the claimant's RFC permits her to resume her previous employment. *Id.* If the claimant's RFC permits previous employment, she is not "disabled" and thus is not entitled to DIB. *Id.* § 404.1520(f). The burden of persuasion rests with the claimant in the first four steps. *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 763 (3d Cir. 2009). At the fifth step, the burden shifts to the Commissioner to demonstrate that the claimant can perform other work consistent with her medical impairments, age, education, past work experience, and RFC. 20 C.F.R. § 404.1520(g). If the Commissioner cannot satisfy this burden, the claimant will receive DIB. *Id.*

## III.    <u>DISCUSSION</u>

Plaintiff alleges that the ALJ's RFC determination is not supported by substantial evidence. (Pl.'s Moving Br. 29-39.) Plaintiff takes issue with both the mental and physical assessment, arguing that the ALJ omitted or improperly rejected certain medical opinions and relied on inappropriate means to reach his conclusions. (*Id.*)

### A.    The ALJ's Mental RFC Determination

Plaintiff first argues that the decision of the ALJ must be remanded because the ALJ's mental RFC assessment: (1) failed to evaluate the opinion of Jennifer Mongiovi, LMHC, and this error was harmful; (2) incorrectly assessed the opinion of Lisa Horlein, LCAT; and (3) provided a lay interpretation of the evidence. (*Id.* at 29-34.) The Court begins by summarizing the ALJ's mental RFC determination and then discusses each argument in turn.

As previously established, the ALJ determined Plaintiff has the RFC to perform sedentary work subject to several restrictions—namely, that Plaintiff is: (1) limited to simple, easy to learn tasks; (2) occasional interactions with the public or her colleagues; and (3) little to no changes in her daily routine. (AR 1990-91.) With respect to Plaintiff's mental health, the ALJ noted that Plaintiff reported difficulty with memory, following instructions, and understanding. (*Id.* at 1991). The ALJ acknowledged that Plaintiff saw a counselor every week and was unable to shop at stores for a prolonged period due to her anxiety. (*Id.*) Overall, the ALJ found that Plaintiff's statements concerning intensity, persistency, and limiting effects were not fully supported by the evidence because the records demonstrated that Plaintiff neither took medication nor engaged in treatment for her mental health from at least August 2023 to February 2024. (*Id.* at 1991-92, 2001.)

In evaluating the medical reports, the ALJ discussed several competing opinions regarding Plaintiff's mental function, ultimately assigning the assessment of Dr. Christine Ransom, PhD, ("Dr. Ransom") significant weight. (*Id.* at 2002-06.) The ALJ found Dr. Ransom's opinion consistent with the examinations in the record supporting a finding that Plaintiff "has moderate limitations in understanding, remembering, or applying information, interacting with others, and adapting or managing oneself, and that her mental health impairments are severe." (*Id.* at 2003.) The ALJ ascribed little weight to the opinion of Hillary Tzetzo, M.D., because her opinion was

8

inconsistent with the record, and she neither treated nor personally examined Plaintiff. (*Id.*) The ALJ next gave little weight to the report of Lisa Horlein, LCAT ("Horlein"), who opined that Plaintiff was "seriously limited" in remembering, understanding, and concentrating, resulting in Plaintiff being absent from work for four days out of the month and, thus, unable to hold consistent, full-time employment. (*Id.* at 2004.) The ALJ explained that Horlein's opinion was inconsistent with treatment records establishing Plaintiff was punctual, cooperative, alert, oriented, and had some mild issues with concentration, attention, and memory, and was also not consistent with Plaintiff's own testimony. (*Id.*) The ALJ further observed that Horlein was not an acceptable medical source under the regulations, even though she personally treated Plaintiff. (*Id.*) The ALJ next determined that the opinion of Nadine Garner, PsyD ("Dr. Garner"), warranted limited weight. (*Id.* at 2006.) Dr. Garner opined that Plaintiff had marked limitations in concentration, understanding, and making decisions, but the ALJ found that opinion inconsistent with the examination records establishing Plaintiff's orientation, cooperation, and intact attention and concentration. (*Id.*)

Although the ALJ failed to evaluate Mongiovi's opinion, as Plaintiff argues, the Court finds that remand is not warranted. In March 2021, Mongiovi completed an assessment of Plaintiff opining that: (1) Plaintiff could not engage in full-time competitive employment on a sustained basis; (2) Plaintiff would be absent more than four days per month; (3) Plaintiff had no useful ability to complete a normal workday; and (4) Plaintiff would struggle maintaining her attention and performing at a consistent pace. (AR 1350-52.) Mongiovi, as a licensed mental health counselor, however, does not qualify as an "acceptable medical source" under the regulations. *See Feliciano o/b/o D.F. v. Comm'r of Soc. Sec.*, No. 18-0502, 2020 WL 1815754, at *3 (W.D.N.Y. Apr. 10, 2020). For opinions from medical sources that do not qualify as "acceptable medical

sources," the ALJ "generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." 20 C.F.R. § 404.1527(f)(2).

First, the discussion of the evidence enables the Court to follow the ALJ's reasoning in accordance with 20 C.F.R. § 404.1527(f). *See Garland v. Ming Dai*, 593 U.S. 357, 369 (2021) ("[A] reviewing court must uphold even a decision of less than ideal clarity if the agency's path may reasonably be discerned." (internal quotation marks and citation omitted)). Although the ALJ did not address Mongiovi's opinion, he discussed Horlein's opinion which concluded that Plaintiff: (1) was "seriously limited" in conducting work-like procedures; (2) was unable to meet competitive standards in the workplace; (3) would be absent from work for more than four days per month; and (4) could not otherwise engage in consistent, full-time employment. (AR 2004.) As previously discussed, the ALJ ascribed little weight to Horlein's opinion because it was inconsistent with both Plaintiff's subjective testimony and the objective treatment records. (*Id.*) Indeed, one of the exhibits cited by the ALJ in this discussion was Mongiovi's treatment records indicating Plaintiff consistently arrived on time to her appointments. (*Id.* at 3481.) Other records cited by the ALJ noted that Plaintiff appeared alert and oriented, spoke at a normal pace and volume, had a linear thought process, had intact attention and concentration, was able to recall remote events, and exhibited good judgment. (*See, e.g., id.* at 2710, 2714, 2717, 2723, 3482-83.) And because Plaintiff concedes Horlein's opinion is substantially similar to that of Mongiovi's, (Pl.'s Moving Br. 32), it therefore follows that the ALJ would have found Mongiovi's opinion inconsistent with those same records given the similarities of the opinions.

Second, the failure to discuss Mongiovi's opinion is harmless error because it would not have changed the outcome. While Plaintiff contends that Mongiovi's opinion would require a finding that Plaintiff was more limited than assessed, Plaintiff cannot reconcile that result with the ALJ's "rejection" of Horlein's opinion. To reach the conclusion Plaintiff advances, the Court would inherently have to rebalance the evidence before the ALJ—which it cannot do. *See Rutherford*, 399 F.3d at 552. Plaintiff accordingly does not meet her burden in demonstrating that the ALJ's error was harmful. *See Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016) (explaining the harmless error review applies to "administrative appeals" and requires a claimant to "explain . . . how the . . . error to which he points could have made any difference" (cleaned up, omissions in original) (quoting *Shinseki v. Sanders*, 556 U.S. 396, 413 (2009))); *accord Rutherford*, 399 F.3d at 553 (explaining that "remand is not required . . . because it would not affect the outcome of the case").

With respect to Horlein's opinion, the Court finds that the ALJ properly articulated why her opinion was not afforded more weight, and that determination was supported by substantial evidence in the record. The ALJ's rationale was sufficiently tied to Plaintiff's own testimony and treatment records, (s*ee* AR 2003-04), and the Court defers to that ruling. The Court further rejects Plaintiff's argument that the ALJ improperly assessed Plaintiff's abilities to prepare meals, go out alone, drive a car, shop in stores, pay bills, and handle a savings account, because those categories of activities are specifically found within the regulations, and therefore, are proper for the ALJ to consider. *See, e.g.*, 20 C.F.R. 404, Subpart P, Appendix 1, § 12.00(D)(3). Plaintiff provides no other reasoning as to why the ALJ erred and, instead, asks the Court to reevaluate the evidence. The Court declines to do so. *See Rutherford*, 399 F.3d at 552.

Finally, having established that the ALJ's mental RFC determination was supported by substantial evidence, the Court rejects Plaintiff's contention that the ALJ improperly provided a lay interpretation of the evidence. It is well established that the ALJ makes the RFC determination, not the physicians. *Morris v. Comm'r of Soc. Sec.*, No. 19-13744, 2020 WL 2764803, at *4 (D.N.J. May 28, 2020) (citing 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), 404.1546(c), 416.946(c)); *Orlando P. v. Comm'r of Soc. Sec.*, No. 21-20186, 2022 WL 17820348, at *10 (D.N.J. Dec. 20, 2022). There is, moreover, substantial support in the record for the ALJ's finding that the Plaintiff, despite her depression and anxiety, can conduct daily activities with relatively low mental abnormalities based upon the documents referenced in the decision. (*See, e.g.,* AR 995-96 (Plaintiff was cooperative but had mild memory loss and concentration), 1382 (Plaintiff describing her daily routine involving taking care of her family and going to appointments), 2386 (Plaintiff presented anxious but otherwise exhibited normal behavior), 2850 (Plaintiff was anxious but spoke clearly with good eye contact).) The Court therefore defers to the ALJ's mental RFC assessment.

### B.    The ALJ's Physical RFC Determination

Plaintiff challenges the ALJ's physical RFC determination arguing that the ALJ (1) failed to properly evaluate the opinions of Diane Ralph, OTR/L ("Ralph"), and Dr. Maria Ilahi, D.O. ("Dr. Ilahi"); and (2) relied on opinion evidence that was inapplicable to the entire relevant time period. (Pl.'s Moving Br. 34-39.)

With respect to Plaintiff's physical RFC, the ALJ concluded that Plaintiff has the RFC to perform sedentary work but is limited to, *inter alia*, lifting no more than ten pounds, sitting for only six hours out of eight, and climbing stairs occasionally. (AR 1990-91.) Plaintiff testified she could sit for only fifteen minutes, stand for only twenty minutes, walk no more than half a mile,

lift two pounds, and cannot walk up the stairs without becoming breathless. (*Id.* at 1991.) The ALJ found her subjective testimony regarding the severity, persistence, and intensity of her condition inconsistent with the record. (*Id.* at 1991-92, 2001.) The ALJ then extensively detailed her medical history during the relevant period. (*Id.* at 1992-2009.)

The ALJ found that the opinions of Dr. Rita Figueroa, M.D. ("Dr. Figueroa"), Dr. Ronald Bagner, M.D. ("Dr. Bagner"), and Dr. Steven Winters, M.D. ("Dr. Winters") held the greatest weight out of all the medical providers. (*See id.* at 2009.) The ALJ determined that Dr. Figueroa's opinion should carry some weight given that it was supported by and consistent with Plaintiff's objective records showing a mildly reduced range of motion in the lumbar spine, an antalgic gate, and some knee osteoarthritis. (*Id.* at 2003.) The ALJ further credited Dr. Figueroa because she examined Plaintiff, despite not being Plaintiff's treating physician. (*Id.*) The ALJ then found Dr. Bagner's opinion—that Plaintiff did not require a cane to ambulate—consistent with Plaintiff's treatment records, and that it held great weight. (*Id.* at 2007.) The ALJ otherwise found Dr. Bagner's opinion regarding Plaintiff's physical limitations yielded little weight because he examined Plaintiff once and some of his medical findings did not have objective support in the record. (*Id.*) The ALJ explained that Dr. Winter had the benefit of examining Plaintiff and reviewing the records from the entire relevant period, not just from the time prior to the date last insured. (*Id.* at 2009.) His opinion regarding Plaintiff's physical limitations was supported with citations to the record and it was overall consistent with those records. (*Id.* at 2008-09.) The ALJ determined Dr. Winter's opinion held some weight. (*Id.*)

The ALJ also gave the opinions of Ralph and Dr. Ilahi very little weight. (AR 2005.) They each opined that Plaintiff could sit for approximately six to seven hours per day, stand for about two hours per day, and should avoid a work environment with shoulder reaching, balancing,

bending, reaching, grasping, kneeling, climbing, walking, and lifting more than three pounds. (*Id.*) Additionally, Ralph and Dr. Ilahi observed Plaintiff exerting inconsistent effort during the examination and presented with garbled speech. (*Id.* at 2005-06.) With respect to their assessments of Plaintiff's physical limitations, the ALJ found no objective medical support in the record to suggest that Plaintiff must avoid walking or that she could lift only three pounds. (*Id.*) Regarding Plaintiff's inconsistent effort and garbled speech, the ALJ observed that the only other time Plaintiff presented such symptoms occurred when she inexplicably had fentanyl in her system. (*Id.*) Because neither doctor tested Plaintiff's blood during their examinations, the ALJ gave these opinions little weight. (*Id.*)

The Court is satisfied that the ALJ provided sufficient reasoning in assigning little weight to the opinions of Dr. Ralph and Dr. Ilahi as required by the regulations. *See Zaborowski v. Comm'r of Soc. Sec.*, 115 F.4th 637, 639 (3d Cir. 2024) ("The statute requires administrative judges to explain only the dispositive reasons for their decisions, not everything else that they considered."); *see also id.* ("Administrative judges must always discuss the two most important factors: supportability and consistency." (citing 20 C.F.R. § 404.1520c(b)(2)). It appears to the Court that Plaintiff seeks a holding that she is more limited than the ALJ assessed. But the RFC determination is the most Plaintiff can do despite her limitations, not the least. *See* 20 C.F.R. § 404.1545(a). And the Court cannot supplant its view of the evidence for that of the ALJ's. *Raglin v. Massanari*, 39 F. App'x 777, 778 (3d Cir. 2002). Because the ALJ's thorough reasoning was supported by the evidence, the Court must defer to the ALJ's credibility determination.[3]

_____

[3] The Court is further unpersuaded by Plaintiff's argument that the ALJ relied on "stale" evidence. (Pl.'s Moving Br. at 37-39.) The ALJ stated that he reviewed the entire record. (AR 1982.) The Court takes the ALJ at his word. *Jones v. Comm'r of Soc. Sec.*, 297 F. App'x 117, 120 (3d Cir. 2008) ("[W]e take the ALJ at his word[.]"). The Court finds the ALJ's determination thorough, detailed, and grounded with extensive support from the record from the date of onset through 2024.

## IV.    CONCLUSION

For the foregoing reasons, the Court affirms the Commissioner's final decision. The Court will issue an order consistent with this Memorandum Opinion.

_____

**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**

Dated:_____March 30____, 2026

15